UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN MINGO,

                Petitioner,

            -v-

T. GRIFFIN,

                Respondent.

16-CV-9636 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In 2005, Petitioner John Mingo was convicted in New York Supreme Court, New York County, of second degree murder, attempted robbery, assault, and criminal possession of a weapon. He is currently serving a sentence of 25 years to life. Proceeding *pro se*, he now brings this petition for habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the petition is denied.

I.  **Background**

*The Events of April 25, 2003.* Petitioner's convictions arise out of a street altercation that occurred in late April 2003. At trial, the State presented evidence of the following facts: In the early hours of April 25, 2003, Ezekiel Jiles, Eric Mangrum, and two of their friends were driving along 21st Street in Manhattan when their jeep was struck from behind by another car. (A50.)[1] The vehicles pulled over, four men (including Petitioner) exited the other car, and all eight men agreed to move around the corner to discuss the accident. (A51.) Jiles' testimony and photographs from a nearby security camera show that during that conversation, Petitioner drew a gun. (*Id.*) Jiles testified that Petitioner then demanded the diamond-studded chain around Jiles'

---

[1] All citations preceded by an "A" refer to Respondent's Appendix at Docket Numbers 12-2 to 12-5.

1

neck, and Petitioner began to reach for the chain. (A52.) As Jiles grabbed for Petitioner's gun in response, Petitioner started shooting. (*Id.*) At least one of the other men also opened fire. (*Id.*) The firefight left both Jiles and Mangrum wounded, and Mangrum later died of his injuries. (A53−54.)

*Trial and Direct Appeal.* After a jury trial, Petitioner was convicted of second-degree murder, first-degree assault, attempted first-degree robbery, and two counts each of criminal possession of a weapon in the second- and third-degree. (A64−65.) The Appellate Division of New York Supreme Court, First Department, affirmed Petitioner's conviction in December 2006. *See People v. Mingo*, 824 N.Y.S.2d 708 (App. Div. 1st Dep't 2006). Petitioner requested leave to appeal to the New York Court of Appeals (*see* A162−63), but leave was denied in April 2007. *See People v. Mingo*, 8 N.Y.3d 948 (2007).

*Post-Conviction Motion To Vacate Judgment.* Next, pursuant to New York Criminal Procedure Law § 440.10, Petitioner filed a motion in June 2008 to set aside the verdict based on the claim that his trial counsel had provided ineffective assistance of counsel. (*See* A167−81.) The Supreme Court of the State of New York denied Petitioner's motion. (*See* A236.) The First Department granted Petitioner leave to appeal the denial (*see* A237), but it later affirmed the lower court's denial of the motion. *See People v. Mingo*, 35 N.Y.S.3d 80 (App. Div. 1st Dep't 2016). Petitioner sought leave to appeal to the New York Court of Appeals (*see* A359−65), but leave was denied on October 4, 2016. *See People v. Mingo*, 28 N.Y.3d 1029 (2016).

*Petition for Habeas Corpus.* Petitioner delivered his petition for habeas corpus to prison authorities for mailing on September 19, 2016. (Dkt. No. 1 at 6.) He raises four grounds, all of which were raised on his direct appeal or his § 440.10 motion: (1) the verdict was against the weight of the evidence; (2) the trial court erroneously refused to redact portions of his videotaped

2

statement; (3) the prosecutor's summation improperly shifted the burden of proof to the defendant; and (4) Petitioner's trial attorney rendered ineffective assistance of counsel. (Dkt. No. 1 at 4.)

## II. Legal Standard

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Furthermore, except in limited circumstances, courts cannot "consider claims that have not been exhausted by fair presentation to the state courts." *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009); *see also* 28 U.S.C. § 2254(b)(1).

When evaluating a state-court ruling, federal courts exercising habeas jurisdiction must employ a "highly deferential standard." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Pursuant to § 2254(d), a federal court must defer to the state court's legal determination of any matter "adjudicated on the merits" unless one of two conditions is met: either the state's adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006).

## III. Discussion

### A. Ground 1: Weight of the Evidence

Petitioner's first ground for habeas relief is that the "verdict was against the weight of the evidence." (Dkt. No. 1 at 4.) Petitioner did not raise this claim in his application for leave to appeal his conviction to the New York Court of Appeals (*see* A162); instead, he sought review of only two of the three claims that he had presented to the First Department. By failing to seek

3

leave to appeal on the basis of his weight-of-the-evidence claim, Petitioner abandoned it. *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) ("The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned.").

Consequently, Petitioner did not "adequately exhaust[] state remedies by fairly presenting . . . his federal claim to the appropriate state courts." *Acosta*, 575 F.3d at 185. Because Petitioner "offers no argument to demonstrate either cause for failure to have raised the argument and resulting prejudice from violation of federal law, nor that a miscarriage of justice will result if [the Court] do[es] not consider this claim," *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011), the Court concludes that Petitioner's weight-of-the-evidence claim is not subject to federal review.

### B. Ground 2: Redaction

Petitioner's next proffered ground is that the trial "court failed to redact [a] portion of [his] videotape[d] statement" made to police and presented to the jury. (Dkt. No. 1 at 4.) In the video, Petitioner indicates that he did not call the police after the traffic accident because he was "wanted in Brooklyn." (A74.) Instead of redacting that statement, the trial court explained to the jury that the statement was meant to explain "why the defendant and others went around the corner after the accident occurred," and it instructed the jury to "disregard [the statement] as it applies to the guilt or nonguilt of the defendant." (Trial Transcript ("Tr.") 309:22−310:2.)[2]

---

[2] The Trial Transcript was submitted to the Court by Respondent on a compact disc. Presumably due to its size, the transcript was not filed on ECF. (*See* Dkt. No. 12 ¶ 4.)

4

For purposes of federal habeas review, it is of no moment whether the trial court's admission of Petitioner's statement of prior criminal activity violated New York's rules of evidence. Instead, the Court considers only whether the trial court's failure to redact the statement deprived Petitioner of a fair trial in violation of his federal rights. *See Estelle*, 502 U.S. at 68. And because Petitioner's redaction claim was adjudicated on the merits by the state court, *see Mingo*, 824 N.Y.S.2d at 708, this Court is constrained to deny his claim unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

The Supreme Court has "express[ed] no opinion on whether . . . the use of 'prior crimes' evidence to show propensity to commit a charged crime" violates the Due Process Clause of the U.S. Constitution. *Estelle*, 502 U.S. at 75 n.5; *see also Newkirk v. Capra*, 615 F. App'x 712, 713 (2d Cir. 2015). Instead, a state-court evidentiary ruling "rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)).

Judged by this high standard, admission of Petitioner's statement that he was "wanted in Brooklyn" did not deprive him of his federal due-process right to a fair trial. Petitioner's statement did not indicate—and the trial court instructed the jury not to "speculate" about—what crime he was wanted for. (Tr. 309:21.) Given this paucity of information and the trial court's limiting instruction, it is clear that the statement neither "provide[d] the basis for conviction" nor "remove[d] a reasonable doubt" from the jury's mind regarding the charged crimes. *Johnson*,

955 F.2d at 181. Indeed, the Court sees no reason to question the First Department's conclusion that "[g]iven the court's thorough limiting instruction, and the overwhelming evidence of defendant's guilt, there is no possibility that the admission of the evidence affected the verdict." *Mingo*, 824 N.Y.S.2d at 708.

### C. Ground 3: Burden Shifting

Petitioner lists his third ground as "prosecutor misconduct in summation." (Dkt. No. 1 at 4.) The Court construes this ground as the same claim raised by Petitioner on direct appeal: that the prosecutor improperly shifted the burden of proof to Petitioner by asserting that he should have produced a witness to corroborate his testimony. (*See* A83–92; *see also* Dkt. No. 15 at 8–20.)

#### 1. Trial and Direct Appeal

The important—and absent—character with respect to this claim is Shania Davis, a close female acquaintance of Petitioner who was with him the night of the altercation. (*See* Tr. 375:1.) On cross-examination, the prosecutor pressed Petitioner about why he did not plan to call Davis as a witness. (*See* Tr. 385:9–390:4.) Defense counsel objected twice during this first colloquy, once to a question about the route Shania had taken to visit Petitioner in pre-trial detention, and again when the prosecutor asked Petitioner if he "would rather face substantial jail time than inconveniencing . . . Davis." (*See* Tr. 387:4–8, 388:25–389:5.) The court overruled the first objection, and instructed the prosecutor to rephrase his reference to "jail" in the second question. (Tr. 387:7–8; 389:3–5.) Later in cross-examination, the prosecutor asked why Petitioner had not told the police about Davis's whereabouts (*see* Tr. 467:18–25) and observed, "[I]n essence, from what you've said in this courtroom to this jury, she could back up your account" (Tr. 468:2–4). Petitioner's counsel objected twice, but he was overruled both times. (Tr. 467:24–25, 468:5–7.)

6

Importantly, all of defense counsel's objections came in the form of a one-word "objection"—he offered no further elaboration.

In his closing remarks, the prosecutor returned to the topic of Davis's absence. The relevant portion of the summation is below:

> [PROSECUTOR:] Something else should strike you about [Petitioner's] credibility. There's somebody missing here. There's somebody missing as far as he's concerned that's very important to him, very important: Shania Davis.
>
> [DEFENSE COUNSEL]: Objection, your Honor.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: Members of the jury, the burden of proof always lies with the People. We have the burden at all times. The defendant need not put a case on. He doesn't have to. I could not comment on it if he didn't. But here he chose to put a case on. He, himself, testified. And he tells you . . . I'm innocent, is what he's telling you. And the person who has the key to that is Shania Davis. She's there when all this happens. Members of the jury, if someone that you love were in trouble and you knew – let's say you had seen them do this, it might be very difficult for you to want to come in and testify against him. But to testify for them? If you had the ability – if you had witnessed what truly happened and had the ability to exonerate them, do you think you would hesitate to come in and testify?
>
> [DEFENSE COUNSEL]: Objection, your Honor.
>
> [PROSECUTOR]: She is not here.
>
> THE COURT: The defendant has no burden to prove anything. The burden is on the People to prove the case beyond a reasonable doubt. The jury can draw whatever reasonable inferences they believe from what evidence has been adduced.
>
> [PROSECUTOR]: I submit to you that she's not here because she could not testify in a positive fashion.
>
> [DEFENSE COUNSEL]: Objection, your Honor.
>
> THE COURT: Sustained.
>
> . . .

> [PROSECUTOR]: The defendant says the reason he doesn't call her is it's inconvenient. He doesn't want to inconvenience her. He didn't think much of that night about inconvenience by bringing a loaded gun into the city. He didn't think much that night about inconvenience when he produced that gun, when it was fired. . . . But having her testify in court, that's an inconvenience. That's something else you should consider, ladies and gentlemen.

(Tr. 506:11−509:1.)

When charging the jury, the court twice reminded the jurors that a defendant is presumed innocent and that the "presumption stays with him throughout" the trial. (Tr. 535:2−4; 543:15−17.) The court further explained that "[i]t is the prosecution's burden to prove each element of a crime, beyond a reasonable doubt," that "[t]he burden of proof never shifts to the defendant, even though he testified and offered evidence in this case," and that "[t]he defendant is not bound to prove or disprove anything." (Tr. 535:11−15, 21−22; *see also* 544:3−22.) The court also explained that if an objection was sustained, the jury "must not draw any inference from unanswered questions or testimony which I [struck] from the record." (Tr. 533:4−6.)

Petitioner argued on appeal, and argues now, that the prosecutor's comments regarding Davis's failure to testify improperly shifted the burden of proof to the defendant, depriving Petitioner of a fair trial in violation of the Due Process Clause of the U.S. Constitution. (*See* A83−92; Dkt. No. 15 at 8−20.) But when Petitioner raised his burden-shifting claim on direct appeal, Respondent argued that Petitioner's counsel had failed to preserve the issue because he did not comply with New York's contemporaneous-objection rule. (*See* A149−50.) Apparently agreeing, the First Department rejected Petitioner's burden-shifting challenge—somewhat obliquely—by holding that "Defendant's remaining contentions are unpreserved and we decline to review them in the interest of justice." *Mingo*, 824 N.Y.S.2d at 709.

8

## 2. The Standard for "Adequate" State Grounds

Before the Court can consider the merits of Petitioner's burden-shifting claim, it must determine whether his claim is reviewable. Ordinarily, a court "cannot review challenges to state court convictions that have been clearly rejected by the state courts on independent and adequate state law grounds."[3] *Acosta*, 575 F.3d at 184; *but see Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) (noting that in habeas cases, the independent and adequate state grounds doctrine "is prudential rather than jurisdictional"). "This rule applies whether the state law ground is substantive or procedural." *Cotto*, 331 F.3d at 238 (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)) (internal quotation marks omitted).

However, "[b]efore accepting a procedural bar defense, a federal court must examine the adequacy of the alleged procedural default." *See id.* at 239. In *Lee v. Kemna*, the Supreme Court explained that while "[o]rdinarily, violation of [a] 'firmly established and regularly followed' state rule[] . . . will be adequate to foreclose review of a federal claim," "[t]here are . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." 534 U.S. 362, 376 (2002) (quoting *James v. Kentucky,* 466 U.S. 341, 348 (1984)). In *Cotto v. Herbert*, the Second Circuit isolated the three "*Lee* factors" relevant to the adequacy inquiry:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial,"

---

[3] "Although 'a habeas petitioner may also bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted,'" Petitioner has not raised that claim here. *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2003) (citations omitted) (quoting *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002)).

> and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

331 F.3d at 240 (quoting *Lee*, 534 U.S. at 382). The *Lee* factors provide "guideposts" in answering the ultimate question: "whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case," as evaluated in the context of "the asserted state interest in applying the procedural rule in such circumstances." *Id.*

### 3. Application of New York's Contemporaneous-Objection Rule to Petitioner's Case

The dispute here is whether New York's application of the contemporaneous-objection rule is "adequate" to preclude federal habeas review of his constitutional claim. More precisely, Respondent argues that Petitioner's counsel failed to preserve his burden-shifting claim on two fronts. First, "he did not raise the appropriate, contemporaneous objections" because "he offered only one-word, unelaborated objections."[4] (Dkt. No. 12-1 at 25.) And second, "when the court specifically reminded the jury, in response to one of [defense counsel's] unelaborated objections, that the People bore the burden of proving the charged crimes beyond a reasonable doubt, petitioner did not dispute the adequacy of the court's curative instruction." (*Id.*)

*Unelaborated Objections to Cross-Examination.* The Court begins with Petitioner's objections to the prosecutor's cross-examination questions—all of which were stated as one-word "objections." The procedural issue here is that defense counsel failed to give reasons for his objections.

---

[4] Respondent also argues that Petitioner's counsel "did not object to the large majority of the prosecutor's comments." (Dkt. No. 12-1 at 25.) The trial transcript, however, shows otherwise: Defense counsel objected multiple times. To the extent that Petitioner challenges any specific comments to which there was no objection, those claims are not preserved and are unreviewable.

As to the first *Lee* factor, although "the likely impact of a timely objection involves a certain degree of speculation," the Court notes that "the purpose of the contemporaneous objection rule is to give the trial court a clear opportunity to correct any error." *Cotto*, 331 F.3d at 243. The trial transcript gives no indication that the court understood Petitioner's objections to rest on the grounds of his federal due-process rights. Petitioner's counsel could have objected for any number of non-constitutional reasons—for example, the form of the questions, their relevance, or their argumentative nature. Therefore, it is certainly possible that had Petitioner's counsel elaborated upon his objections, he may have "changed the trial court's decision." *Id.* at 240. This factor favors Respondent.

The second *Lee* factor also favors Respondent. New York's contemporaneous-objection rule requires an objecting party to "ma[k]e his position with respect to the ruling or instruction known to the court." N.Y. Crim. Proc. Law § 470.05(2). And in applying this statute, the New York Court of Appeals has consistently held that a claim is not reviewable on appeal where counsel "failed to advise the trial court that the . . . claimed error was the basis for his objection." *People v. Tevaha*, 84 N.Y.2d 879, 881 (1994). In short, "[t]he word 'objection' alone [is] insufficient to preserve [an] issue for [appellate] review." *People v. Fleming*, 70 N.Y.2d 947, 948 (1988).

Finally, with respect to the third *Lee* factor, the Court concludes that Petitioner did not "substantially comply" with the requirement that objections must be supported by reasons, given that the purpose of the rule is "to ensure that the parties draw the trial court's attention to any potential error while there is still an opportunity to address it." *Cotto*, 331 F.3d at 245. The holding of *Osborne v. Ohio*, 495 U.S. 103 (1990), is instructive. The *Osborne* Court considered a defendant's "objections that his child pornography conviction violated due process because the

trial judge had not required the government to prove two elements of the alleged crime: lewd exhibition and scienter." *Lee*, 534 U.S. at 376. The Court held that the defendant's failure to object contemporaneously to the trial court's omission of a scienter charge created a procedural bar to federal habeas review. *Osborne*, 495 U.S. at 123. But because defense counsel "had made his position on [the lewdness] element clear in a motion to dismiss overruled just before trial," the Court held that the defendant's "failure to object to the charge by reasserting the argument he had made unsuccessfully on the motion to dismiss" did not create a procedural bar. *Lee*, 534 U.S. at 377. The lesson of *Osborne* is that procedural error in raising an objection may be excusable on federal habeas review, but only if the trial court received actual notice of the claim at some point during the proceedings; "counsel [must] do their part in preventing trial courts from providing juries with erroneous instructions." *Osborne*, 495 U.S. at 123. In this case, however, the reasons for Petitioner's objection were not merely (and excusably) offered prematurely; they were never given at all. Therefore, the final *Lee* factor favors Respondent as well.

Because all three *Lee* factors counsel in favor of Respondent, the Court concludes that Petitioner's failure to comply with New York's contemporaneous-objection rule bars habeas review of his constitutional challenge to the prosecutor's cross-examination questions.

*Objections During Summation.* Petitioner's challenge to the prosecutor's comments during summation raises a slightly different procedural issue. Here, defense counsel did object, and although he did not provide a basis for his objection, his grounds were apparently sufficiently clear to enable the court to sustain the objection and give a curative instruction. But defense counsel did not question the adequacy of the court's curative instruction nor request a mistrial.

The first and third *Lee* factors favor Respondent on this failure-to-object issue for similar reasons as the failure-to-explain issue discussed above. Had Petitioner notified the court that he believed the sustained objection and curative instruction had not cured the purported harm, the court very well may have taken additional corrective action. And the lack of *any* objection—even more so than the presence of an *unexplained* objection—cannot be said to substantially comply with New York's contemporaneous-objection rule.

The second *Lee* factor also favors Respondent. New York Criminal Procedure Law § 470.05(2) states that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court . . . is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." This rule requires that a party notify the court if he believes an error has gone un-remedied—including during summation. In *People v. Heide*, the New York Court of Appeals held that the "[d]efendant's claim that certain remarks made by the prosecutor during summation . . . deprive[d] him of a fair trial" were unpreserved because "[f]ollowing the Trial Judge's curative instructions, defense counsel neither objected further, nor requested a mistrial." 84 N.Y.2d 943, 944 (1994). The court concluded, therefore, that "the curative instructions must be deemed to have corrected the error to the defendant's satisfaction." *Id.* The facts of this case are not distinguishable from those in *Heide*, and therefore New York "caselaw indicate[s] that compliance" with the contemporaneous-objection rule "was demanded in the specific circumstances presented" by this case. *Cotto*, 331 F.3d at 240; *see also People v. Keizer*, 69 N.Y.S.3d 681, 683–84 (App. Div. 2d Dep't 2018) (holding that "[t]he defendant's contention that the prosecutor committed prosecutorial misconduct in her summation is unpreserved for appellate review, as the defendant failed to move for a mistrial or

request further relief when the Supreme Court gave curative instructions"); *People v. Zabala*, 872 N.Y.S.2d 104, 104 (App. Div. 1st Dep't 2009) (holding that "[b]y failing to object, by making only generalized objections, and by failing to request further relief after the court took curative action, defendant has failed to preserve his present challenges to the People's cross-examination and summation").

In light of the *Lee* factors, the Court concludes that Petitioner's failure to object after the court sustained his initial objections and gave a curative instruction bars federal habeas review of Petitioner's challenge to the prosecutor's summation.

### D. Ground 4: Ineffective Assistance of Counsel

Petitioner's final ground for habeas relief is that his trial attorney rendered ineffective assistance of counsel. (Dkt. No. 1 at 4.) In particular, Petitioner argues that his lawyer failed (a) to "conduct an adequate investigation into [the] video surveillance tape" from which the government extracted six still photographs presented as evidence at trial, (b) to "object to the admission of [the] still photographs," and (c) "to move to introduce [the] videotape in it[s] entirety." (*Id.*)

First, the Court must determine whether Petitioner's ineffective-assistance claim was properly exhausted. The issue is this: The motion court denied Petitioner's ineffective-assistance claim in a one-sentence order, explaining that the motion was "denied for the reasons set forth in [the People's] Response." (A236.) As the First Department held on review, this denial order violated New York Criminal Procedure Law § 440.30(7), which requires a court to "set forth on the record its findings of fact, its conclusions of law and the reasons for its determination" of a motion to vacate a judgment. *See Mingo*, 35 N.Y.S.3d at 81. But despite this deficiency, the First Department declined to reverse or remand the case, stating that "[a]lthough 'the court's statement . . . was insufficient to satisfy the requirements of

14

[§ 440.30(7),] the record is sufficient to enable us to intelligently review the order denying defendant's motion.'" *Id.* (quoting *People v. Jones*, 971 N.Y.S.2d 595, 596 (App. Div. 4th Dep't 2013)). The First Department affirmed the motion court. *See id.*

Petitioner then filed an application for leave to appeal to the New York Court of Appeals, seeking a certificate "granting permission to appeal and certifying that there is a question of law in [his] case as stated in [his] brief." (A359.) In his supporting letter, Petitioner urged the Court of Appeals to grant his appeal so that it could address the motion court's violation of § 440.30(7) and the First Department's affirmance despite the procedural error. (A361.) Respondent argues that with this letter—which focused only on procedural deficiencies—Petitioner effectively abandoned the merits of his ineffective assistance of counsel claim. (*See* Dkt. No. 12-1 at 35.)

The Court disagrees. Petitioner did not fail to exhaust his ineffective assistance of counsel claim by raising his procedural objection to the trial court's order denying his motion to vacate. To the contrary, Petitioner offered the Court of Appeals a *reason* to grant review of his claim. If Petitioner had been successful in securing appellate review, and if the Court of Appeals had concluded that the motion court's order was procedurally deficient, then the court would have needed either (1) to adjudicate the merits of Petitioner's ineffective-assistance claim, or (2) to remand the case to the lower court for a more fulsome opinion (at which time, presumably, Petitioner could have renewed his appeal). Either way, Petitioner's application for leave to appeal kept his ineffective-assistance claim alive until it was exhausted. Petitioner's ineffective-assistance claim is therefore subject to habeas review.

On the merits, however, Petitioner faces an extremely high bar. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court "identified the two components to any ineffective-assistance claim: (1) deficient performance and (2) prejudice." *Lockhart v. Fretwell*, 506 U.S.

15

364, 369 (1993). The prejudice prong is especially difficult to show: It requires a defendant to "demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *Strickland*, 466 U.S. at 694). And on habeas review, pursuant to § 2254(d), the court asks not whether there is a reasonable probability that the outcome would have been different, but rather whether the state court was *unreasonable* in concluding that there is no reasonable probability of prejudice. *See Cullen*, 563 U.S. at 197−98.

Given this high standard, the Court cannot conclude that the First Department unreasonably found a lack of prejudice to Petitioner. To the contrary, having viewed the surveillance video (which is, in fact, a series of still photographs),[5] the Court agrees with the First Department's conclusion that "[r]egardless of whether trial counsel actually viewed the entirety of a surveillance videotape . . . , and regardless of whether counsel reasonably should have done so, defendant cannot satisfy the . . . federal prejudice requirement[], because the videotape is simply not exculpatory or helpful to the defense in any way." *Mingo*, 35 N.Y.S.3d at 81. The First Department further found—not at all unreasonably—that "the only relevant portions [of the tape] are the photographs that were introduced at trial." *Id.*

Petitioner argues in reply that the "videotape . . . was never properly made part of the record" before the First Department and, consequently, that the court's "reliance on extra-record material . . . forfeits any deference" owed to its decision. (Dkt. No. 15 at 4.) However, even if the First Department's use of the video was procedurally improper—which the Court does not decide either way—that is no basis to conclude that the court's factual finding was unreasonable

---

[5] The full time-lapse surveillance video was submitted to the Court by Respondent on a compact disc. (*See* Dkt. No. 12 ¶ 4.)

or that its reliance on the video violated a federal right. Furthermore, to the extent Petitioner seeks to challenge the First Department's use of extra-record evidence, that issue was not raised in his application for leave to appeal to the Court of Appeals (*see* A363−64) and is therefore barred from habeas review for lack of exhaustion.

Consequently, the Court denies Petitioner's claim for relief based on ineffective assistance of counsel.

## IV. Conclusion

For the foregoing reasons, Mingo's petition for a writ of habeas corpus is DENIED.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: July 24, 2018
       New York, New York

                                           J. PAUL OETKEN
                                         United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*